**SIANAVA R. S. TAGO (Acting for and in behalf of the Sevaaetasi Family of the Village of Pago Pago), Plaintiff**

**v.**

**LEOTA of Pago Pago, Defendant**

No. 23-1963

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Leiliili" in Pago Pago]

June 27, 1963

Sianava R. S. Tago *pro se.*
Logo, Counsel for Leota.

OPINION OF THE COURT

ROEL, *Associate Justice.*

Came on to be heard the above entitled and numbered cause, wherein plaintiff, Sianava R. S. Tago (Acting for and in behalf of the Sevaaetasi Family of the Village of Pago Pago) appeared personally on his own behalf; and defendant, Leota of Pago Pago, appeared personally and by and through his counsel, Logo.

Plaintiff filed a petition against defendant on April 24, 1963 wherein he asks the Court for four (4) remedies, as follows:

"(1) Petition for removal of part or parts of Leota European houses now on and trespassing Sevaaetasi Family land; and

"(2) To stop Leota from extending his house on said Sevaaetasi Family land; and

"(3) Restraining the Leota Family from further construction on the Sevaaetasi Family land pending a final decision of the Court; said construction of a new European house of the Leota Family land is now started; and

"(4) To establish an easement (right of way) for members of the said Sevaaetasi Family in order for them to go to and from the Public Highway."

On the morning of the day of the trial, before the actual hearing, the three judges, members of this Court, visited the site of the alleged dispute, in the presence of both parties to this suit. The Court had an opportunity to view the land and then endeavored to ascertain the dividing line between Sevaaetasi land and Leota land. In this regard, the

Court tried to locate certain monuments set out in the plat of a survey done in 1929, which survey was made as a result of a suit between the Leota and Sevaaetasi families in Case No. 1-1929. These monuments were located to the satisfaction of the Court.

The testimony and the evidence presented by the parties at the trial was contradictory, the main contention of the plaintiff being that part of Leota's new house was located on Sevaaetasi land called Leiliili, and the defendant insisting, just as strongly, that his new house was wholly situated within Leota land and in no way encroached upon Sevaaetasi land.

Among the testimony and evidence presented by plaintiff was the fact that he had filed a complaint against Leota in 1952 for building a house (not the house the subject of the present dispute but another one) partly on Sevaaetasi land. Plaintiff claimed that on that occasion the Court had the 1929 survey retraced and that the monuments shown to this Court at the site of dispute were held to mark the boundary line between the Sevaaetasi land and Leota land. This plat of the survey made in 1929, as corrected by the Court at that time, which is still in the papers of Case No. 1-1929, was referred to at the present trial and used by both parties to the suit. The judgment rendered by the Court in 1929 was also used and referred to by both parties.

Plaintiff testified that at the 1952 hearing the Court held that part of Leota's house was on Sevaaetasi land, and that the Court asked plaintiff that if he, plaintiff, wanted it done, the Court could order that part of Leota's house which was on Sevaaetasi land be torn down. However, the plaintiff further testified that he, in open court, had stated that he did not want the part of Leota's house which was on Sevaaetasi land to be torn down and that he, plaintiff, would settle the matter with Leota. Plaintiff continued that he had allowed Leota to leave said house there from 1952

until Leota tore it down and had started to build his present new house. At no time during all those eleven (11) years was there any action or effort on the part of the plaintiff to revoke the permit or license of Leota to leave his house partly on Sevaaetasi land. After Leota tore down the house he built in 1952, he put up a concrete foundation and columns about $1\frac{1}{2}$ to 2 feet east of where the previous house was or toward the highway, with the result that Leota's new house appears to encroach between $1\frac{1}{2}$ to 2 feet less than did the 1952 house on Sevaaetasi land.

 There is no question in the Court's mind that Leota's present new house encroaches partly on Sevaaetasi land. Plaintiff claims that said house encroaches between 9 and 10 feet into Sevaaetasi land. The Court, after viewing the site, is of the opinion that if a straight line is drawn from north to south connecting the two monuments setting out the boundary of the Sevaaetasi and Leota land in the 1929 survey, part of Leota's new house would encroach into Sevaaetasi land a maximum of from 4 to 5 feet. The measurement was not taken exactly and no exact measure was produced by either of the parties in Court, but this is not too important since the exact measurement can be ascertained at any time by measuring from a straight line connecting the two monuments referred to in the survey.

 We now come to the point as to whether that part of Leota's new house which is encroaching on Sevaaetasi land should be removed or torn down as prayed for in plaintiff's petition. This Court is of the opinion that that part of Leota's new house situated on Sevaaetasi land should not be removed. The Court heard testimony in connection with a 1952 court dispute involving the same parties and the same land. Neither the transcript nor the judgment of the 1952 hearing were formally presented or admitted into evidence before this Court by either of the two

parties. The plaintiff furnished most of the information in this connection, and he in open court testified that he had allowed Leota to let the house stand even though it encroached partly on Sevaaetasi land. The Court believes plaintiff's testimony and considers said action in 1952 by plaintiff as a license from plaintiff to defendant to allow Leota's house to encroach partly on Sevaaetasi land. We believe that, following the agreement between plaintiff and defendant, Leota occupied that portion of Sevaaetasi land on which his house stood as a licensee.

33 Am.Jur., Licenses, Sec. 91 in part reads as follows:

"It (a license) is an authority to do a lawful act, which, without it, would be unlawful, and while it remains unrevoked is a justification for the acts which it authorizes to be done. According to this principle a bare parol license, while unrevoked, even though without consideration, will furnish a justification for an act which would otherwise be a trespass. It is not material that a mere license is or is not in writing, nor is it essential that it be on a consideration. . . ."

Section 92 partly reads as follows:

". . . A license may arise by implication; and a parol license may result from circumstances or the ratification of previous acts, as well as from permission expressly given. . . ."

■■ It appears to this Court that Leota relied on this license and lived in said house unmolested for more than eleven (11) years before he started building the present new house. There is no record or testimony or evidence to the effect that the license granted defendant by plaintiff in 1952 was ever revoked before the institution of this action on April 24, 1963. By that time defendant had already started his present new house, which western boundary as we said earlier rests from $1\frac{1}{2}$ to 2 feet less on Sevaaetasi land than did the house situated there in 1952 and torn down by defendant to build his new house. We are

of the opinion that in laying the foundations for his new house defendant relied on the license he had received from plaintiff in 1952, which, not having been revoked, was still effective. If instead of tearing down the old house defendant had this year decided to build another story on top of the house he built there in 1952 and which encroached on Sevaaetasi land from $1\frac{1}{2}$ to 2 feet more than the present house, and which plaintiff allowed to remain partly on Sevaaetasi land, there would be no question that defendant could have built that second story in reliance of the 1952 license, unless the original license contained any limitations, which it did not. While it may be said that no parol license involving land should be irrevocable, it is the opinion of this Court that the defendant, having relied upon the previous license from the plaintiff and having expended monies in the tearing down of his old house and the construction of his new one as a result of such reliance, should be allowed, and the defendant is hereby ordered by the Court to be allowed, to exercise said license and live in his new house for a reasonable period of time.

We come now to plaintiff's second point: "(2) To stop Leota from extending his house on said Sevaatasi [sic] Family land." As we have said before, to the extent that Leota's new house overlaps beyond a straight line from north to south connecting the two monuments, Leota's new house is encroaching on land which is the property of the Sevaaetasi Family. Any further extension of this house into Sevaaetasi land is hereby forbidden, and the Court hereby orders defendant that no further extension of the house now under construction shall be made into Sevaaetasi land.

Plaintiff's point number (3) in the petition has already been covered elsewhere in this decision.

■ Plaintiff's point No. (4) reads: "To establish an easement (right of way) for members of the said Sevaaetasi Family in order for them to go to and from the public highway." After considering the testimony and the evidence, the Court, without making a decision as to where the way of ingress and egress between Sevaaetasi land and the public highway lay in the past, hereby orders and decrees that plaintiff and members of the Sevaaetasi family are entitled to have a right of ingress and egress from the Sevaaetasi land out into the highway and that such means shall be by way of a path running between the south side of Leota's new house and Pila Patu's branch store situated between the stream and Leota's new house.

■ Plaintiff contended and argued that the overall height of defendant's new house was such that it would block the passage of air, thereby jeopardizing the health and life of the members of the Sevaaetasi Family. The Court is convinced that there is ample space between Sevaaetasi Family houses and defendant's new house and plenty of room for the circulation of air entering the area from all directions, and that the height of Leota's new house in no way jeopardizes the life or health of the Sevaaetasi Family.

In conclusion, after considering the plaintiff's petition and weighing all the testimony and the evidence, it is hereby ORDERED, ADJUDGED AND DECREED by the Court as follows:

1. That a certain portion of defendant's new house is presently encroaching upon Sevaaetasi Family land.

2. That defendant obtained a license from plaintiff in 1952 to allow defendant to have his house partly encroach upon Sevaaetasi land. That defendant relied upon said license when he tore down his old house after 11 years and started to build his present new house on or about April,

1963. That that part of defendant's new house encroaching upon Sevaaetasi land need not be presently removed, but allowed to remain for a reasonable time or until defendant tears down his present new house, whichever occurs first.

3. That defendant allow the plaintiff and the people from the Sevaaetasi Family a right of ingress and egress to allow them to get from their land out to the public highway. That said right-of-way shall be in the form of a path of at least four (4) feet wide to be situated between the south end of defendant's new house and Pila Patu's branch store, which is situated between the stream and defendant's new house.

4. That the present height of defendant's new house is not prejudicial to the plaintiff to the extent that said height jeopardizes the health or life of members of Sevaaetasi family.

5. Court costs in the amount of $25.00 to be paid by defendant, Leota, within 30 days.